|    |     |
|----|-----|
| 21 | 461 |
| 102| 102 |

### George Halley & al. *versus* Elijah Webster.

If it be proved that a testator, a short time before making his will, was of unsound mind, it throws the burthen of proof upon those who come to support the will, to show the restoration of his sanity.

It is competent for the party opposed to the establishment of the will to prove, that the testator, a short time prior to the making of the instrument, was insensible; that he was unconscious of what was going on around him; that he was much prostrated by his sickness; that he did not appear to know an intimate acquaintance; and that endeavors to converse with him proved ineffectual; the same being not mere matters of opinion, but facts.

But testimony is inadmissible, that a witness, called by the opposing party, had stated, " that he had lost his devotion; that he intended now to serve the devil as long as he had served the Lord; and that he had a pack of cards which he carried about in his pocket and called them his bible;" it not being in conflict with any statement he had made.

This was an appeal from the decree of the Judge of Probate, approving the last will and testament of Charles T. Halley, deceased. The appellants alleged that the deceased, at the time of making the instrument, was not of sound and disposing mind and memory; and an issue was formed for the jury, and tried before Shepley J. The respondent had introduced and examined one Osmore, who had attended the deceased in his last sickness, and whose testimony had a tendency to show, that the deceased had a sound mind at the time of making the will. The heirs at law introduced evidence to discredit Osmore, and called a witness, who testified, that Osmore had told the witness, that he, Osmore, had lost his devotion; that he intended now to serve the devil as long as he had served the Lord; that he had a pack of cards with him which he carried

Halley *v.* Webster.

about in his pocket, and called them his bible." This testimony was objected to by Webster, but admitted. The heirs at law introduced certain depositions, and certain portions of them "*underscored with black lines*" were objected to by the respondent, but admitted. They were these: — "I endeavored to converse with said Halley but could not, because he was insensible." "He appeared to be very much prostrated with sickness, and did not appear to know Mr. F.", a neighbor. "He appeared at this time to be in a sog, and perfectly unconscious of what was around him." "I found him exceedingly prostrated." "He appeared at that time to be unconscious of what was transacting around him."

The counsel for the heirs requested the Court to instruct the jury, that if they were satisfied, that a short time before the making of the will, the testator was of unsound and non-sane memory, that the burthen of proof was upon the respondent to satisfy them, that he was of sound mind and memory at the time of executing it.

The Judge instructed the jury on that point, that if they were satisfied, that previous to the execution of the will the deceased was of unsound mind and memory, the burthen of proof would be upon the respondent to prove, that at the time of executing it, he was of sound mind and memory; and also that the lowest share of mind and memory which would enable a person to transact the ordinary business of life with common intelligence would be sufficient to answer the requirement of the law that he should be of sound and disposing mind and memory; and that so much mind and memory would be required.

The verdict of the jury was, that the deceased was not, at the time, of sound and disposing mind and memory; which verdict was to be set aside, if the testimony was improperly admitted, or the instructions were erroneous.

There was also a motion to set aside the verdict, because it was against the evidence.

NOTE. — At the argument on this motion it was said, that the evidence was not accurately reported. The Court re-

marked, that where such motion is made, it is the duty of the counsel for the party making it, to prepare a report of the evidence, and deliver it to the counsel of the opposing party. If it be not satisfactory, his view of the evidence should be furnished; and the Judge, who tried the action, should determine the points of difference; so that no question of this character should be raised at the argument.

*Rogers* and *J. Appleton* argued for the respondent.

In the course of their arguments, they cited 2 Eccl. R. 269, 369; 4 Eccl. R. 182; 5 Eccl. R. 211; 2 Stark. Ev. 1702; 4 Coke, 123, *Beverley's* case; 1 Swinb. on Wills, 112, 123; 2 Yeate, 48; 1 Hen. & Mumf. 276; Toller, 8; Powell on Dev. 146; 3 Brown's C. Cas. 443; 13 Ves. 87; 5 Johns. R. 144; 3 Atk. 173; 12 Ves. 450; 4 Wash. C. C. R. 262, 580; 9 Conn. R. 40; 7 Serg. & R. 90; 1 Pet. C. C. R. 164; 1 Eccl. R. 291; 3 Eccl. R. 258; *Brooks* v. *Barrett*, 7 Pick. 95; 1 Stark. Ev. 134; *Comm.* v. *Buzzell*, 16 Pick. 154; 7 East, 108.

*Cutting* argued for the heirs at law, and cited *Stone* v. *Damon*, 12 Mass. R. 488; *Breed* v. *Pratt*, 18 Pick. 115; 2 Phil. Ev. 191; and 5 Johns. R. 159.

The opinion of the Court was drawn up by

WHITMAN C. J. — The instructions of the Judge to the jury, as to the proof of sanity, were unquestionably correct. No position can be better established than that, if a testator, a short time before making his will, be proved to have been of unsound mind, it throws the burthen of proof upon those who come to support the will to show the restoration of his sanity. The Judge must be understood to mean a general and fixed insanity; and not a mere temporary delirium, such as takes place in a fit of intoxication. When a person is laboring under a typhus fever, which it would seem was the testator's disease, a suspension of the rational powers is often superinduced, of many days duration. And if the proof were, as the tendency of the testimony would seem to have been, that the testator had arrived to that stage in the fever, when such

suspension had, to a greater or less extent, taken place, so as to incapacitate him to make a will, those who would undertake to establish a will, thereafter made, during his sickness, should be holden to prove, that he had, at the moment of making his will, recovered the use of his reason. The authorities upon this point are collected, and well considered in Shelfor's treatise on Insanity, &c. p. 275 to 290, and clearly support the ruling of the Judge in this particular.

The testimony objected to, underscored by black lines, in certain depositions used in the case, we think was legally admissible. It was as to the appearance of the testator, when the deponents saw him. He appeared, they say, unconscious of what was going on around him ; and much prostrated by his sickness ; that he did not appear to know a certain individual ; and that an endeavor to converse with him proved unsuccessful by reason of insanity. These were not mere matters of opinion, but facts, somewhat of a general cast, and combining many minute particulars. A cross-examination might have elicited the indications tending to establish the general facts. A witness might, in general terms, have testified that the testator was insane. It would have been competent for the adverse counsel to have inquired into the particulars conducive to the establishment of the general fact. So if a witness had testified that the testator was asleep, the particulars from which he became assured that such was the fact, might have been inquired into.

As to the testimony objected to but admitted, that one of the witnesses called by the appellee had stated, " that he had lost his devotion ; that he intended now to serve the devil as long as he had served the Lord ; that he had a pack of cards which he carried about in his pocket, and called them his bible," we think it should have been excluded. It was not relevant to the point in issue. The only effect of it was to disparage the witness. It did not conflict with any statement by him made ; nor did it, according to the rules of evidence, directly tend to show that his general character for truth was bad. The admission of such testimony would be opening a wide door

for the introduction, without any definite limitation, of the idle conversations of a witness from his earliest manhood. In this instance the jury may have been seriously prejudiced by its introduction; and may have been led to place less reliance upon the witness' testimony than they otherwise would have done. The appellee could not have expected such an attack upon his witness; and therefore could not have come prepared to rebut it. Not being able to discover that it had not an undue effect upon the minds of the jury, in the conclusion to which they came, we think a new trial must be granted.